UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PLASTERERS LOCAL 8 PENSION FUND, et al., | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 17-157 |
| v. | : | OPINION |
| JERSEY PANEL CORPORATION, | : | |
| Defendant. | : | |

This matter is before the Court on cross-motions for partial summary judgment. Oral argument was heard on the motions on May 23, 2018 and the record of that proceeding is incorporated here. For the reasons placed on the record that day, as well as those stated here, Defendant's motion will be granted and Plaintiffs' motion will be denied.

BACKGROUND

The Parties

The issue before the Court is limited to determining which labor agreement governs the parties' relationship. Plaintiffs are Plasterers Local 8 Pension Fund, Plasterers Local 8 Pension Plan, Plasterers Local 8 Welfare Fund, Plasterers' Local 8 Health and Welfare Plan, Plasterers Local 8 Annuity Fund, Plasterers Local 8 Annuity Plan, Plasterers Local 8 Joint Apprenticeship Fund, National Plastering Industry's Joint Apprenticeship

Trust Fund d/b/a OPCMIA International Training Fund, Plasterers Local 8 Labor Management Cooperation Committee Fund, Plasterers Local 8 Political Action Committee, Cement Masons Union Local No. 592 of Philadelphia, Pennsylvania, and Bill Ousey, a fiduciary. They allege that the Defendant owes $5,209,603.94 in delinquent contributions for the period of January 1, 2013 to December 1, 2015 under ERISA and the operative contract, a May 15, 2003 "International Agreement" between Defendant and the Operative Plasterers and Cement Masons' International Association.

Defendant Jersey Panel Corporation ("JPC") is a family-owned business that manufactures and installs prefabricated exterior wall systems as well as field-applied exterior wall systems. Dominick P. Baruffi, II has been the President and CEO of JPC from at least 1999 to the present. JPC employs both union and non-union employees. All non-union employees perform shop work exclusively. Union employees work primarily at customer jobsites performing field-applied coating work, although some union employees perform work in JPC's shop from time to time. JPC's employees who performed field work were represented by Operative Plasterers & Cement Masons International Association No. 8 ("Local 8") from December 1, 1999 until December 1, 2015. William Taylor was the

President/Business Agent of Local 8 in 1999 and continued in that role until his death on July 29, 2014. Taylor was JPC's primary contact at Local 8 during the entire time of their relationship from 1999 until 2014. Thomas Kilkenny was also involved in Local 8's leadership, serving as the Business Manager/Financial Secretary of Local 8 from at least 1999 until 2015. Defendant seeks partial summary judgment in its favor, arguing that a "Specialty Agreement," consistent with JPC's 16-year course of performance, governs and precludes any claim for damages related to work performed in its shop by non-union employees.

The Dispute

On or about September 1, 2015, Local 8 was consolidated into Plaintiff Cement Masons Union No. 592 of Philadelphia, Pennsylvania ("Local 592"). Through this consolidation, Local 8 no longer existed as an independent entity; Local 592 assumed the duties once held by Local 8. On or about October 22, 2015, Local 592 gave written notice of the termination of a Specialty Agreement (discussed below) effective December 1, 2015. On or about November 30, 2015, JPC's union employees informed JPC that they no longer wished to be represented by Local 8, Local 592, or the International Union. Rather, JPC's union employees wanted the Bricklayers

and Allied Craftworkers of New Jersey and its Local 5 (collectively, "BAC") to represent them for purposes of collective bargaining with JPC.

The Documents

*1. The Specialty Agreements*

During the course of their relationship, JPC and Local 8 executed an International Union of Operative Plasterers' Local No. 8 Collective Bargaining Agreement, Specialty Agreement, three times, with effective dates of December 1, 1999 through December 1, 2004, July 1, 2004 through December 31, 2009, and July 1, 2010 through December 31, 2015. Each Specialty Agreement provided, in Article 7, that it applied:

> to all field plastering work performed by Jersey Panel in field operations and shall not cover any work performed in shops by Jersey Panel or any subsidiary thereof. [Although], at the sole discretion of Jersey Panel Corporation, workers covered by the attached agreement may from time to time be utilized to perform some portion of the work at Jersey Panel Corporation's shop. . . . Geographical areas covered by this Agreement are all counties of New Jersey, also includes Delaware and Pennsylvania.

Baruffi and Taylor negotiated the terms of each Specialty Agreement and counsel for JPC and Local 8 had opportunities to review each agreement. JPC sent its executed copy of each Specialty Agreement with a letter from Baruffi, as CEO of JPC, to Taylor, as Business Agent of Local 8. The cover letters attached to each Specialty Agreement were incorporated

by reference into each agreement and provided, "The attached Agreement shall only be applied to field applied coating work performed at the jobsite by Jersey Panel Corporation and to no other work. The Agreement specifically excludes work performed at Jersey Panel Corporation's shop." Each letter, including one dated June 28, 2010 for the agreement effective July 1, 2010 through December 31, 2015, also expressly "modifie[d] and supersede[d]any previous agreements between Jersey Panel Corporation and the Operative Plasterers' and Cement Mason's International Union." Taylor executed each Specialty Agreement on behalf of Operative Plasterers' and Cement Masons' International Association.

*2. The International Agreement*

On May 15, 2003, JPC and the Operative Plasterers and Cement Masons' International Association entered into an "International Agreement" that provided in Article I, Section 3, titled Scope and Purpose of Agreement:

> This Agreement shall not apply to the geographic jurisdiction of the Home Local Union except where the International gives its written consent. Absent such written extension of the Agreement, all work in the Home Local Union of the Contractor shall be in accordance with the Home Local Union's collective bargaining agreement.

The International Agreement defined Home Local Union as "the local union having jurisdiction in the area of the Employer's place of business." The International Agreement also provided, in Article VII, Section 3:

> For all employees covered by this Agreement, [fringe benefit payments] shall be in accordance with the established and bona fide local union agreements where the work is being performed; provided, however, that if the provisions of said local union agreements are in conflict with this Agreement, this Agreement shall prevail. . . . Other fringe benefit contributions pursuant to this paragraph shall be paid to the home local of the employee.

JPC sent its executed copy of the International Agreement with a letter dated September 16, 2003 from Baruffi, CEO of JPC, to Patrick Finley, General Secretary-Treasurer for the International Union. The cover letter was incorporated by reference into the International Agreement and reiterated that the International Agreement would not cover work performed at JPC's shop by stating, "The attached Agreement shall only be applied to field applied coating work performed at the jobsite by Jersey Panel Corporation and to no other work. The Agreement specifically excludes work performed at Jersey Panel Corporation's shop." The International Union faxed the International Agreement, inclusive of the September 16, 2003 cover letter, to Taylor on or about September 6, 2006.

*3. The Contractor Agreements*

Local 8 had a collective bargaining agreement that it utilized for contributing employers, titled the Operative Plasterers' and Cement Masons' International Association of the United States and Canada Local 8 Contractor [Commercial] Agreement including for the periods of May 1, 2012 to April 30, 2015 and May 1, 2015 to April 30, 2018. JPC sent its executed copy of the 2012 Contractor Agreement with a letter dated June 5, 2012, from Baruffi to Taylor. The letter indicated that Baruffi's signature on the attached agreement was only to "replace the rate schedule (Exhibit B) indicated in our Specialty Contract effective July 1, 2010, which pertains to employees sent or provided by Local No. 8 per Article 5, Section 2 [i.e., journeymen and apprentices performing work in the field]. This OP Contractor Agreement in no way modifies or supersedes our existing Specialty Contract."

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(a). Thus, the Court will enter summary judgment in favor of a movant who

shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand

a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Discussion

The Third Circuit has stated, "[w]e interpret collective-bargaining agreements . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." United Ass'n of Journeyman & Apprentice Plumbers & Pipefitters of U.S. & Canada Local 74 v. Int'l Bhd. of Elec. Workers Local 313, 643 F. App'x 133, 135 (3d Cir. 2016) (citing M & G Polymers USA, LLC v. Tackett, –––U.S. –––, 135 S. Ct. 926, 933 (2015)). Thus, as with any other contract, the parties' intentions control, and "[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." M & G Polymers, 135 S. Ct. at 933.

"To decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear." Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993). Instead, courts "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274, 1284 (3d Cir. 1991). Therefore, "Before making a finding concerning the existence or absence of ambiguity, [courts]

consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." Rolls-Royce, 989 F.2d at 135. "Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." Id.

In this case, the Court finds that the parties' 2010 Specialty Agreement is enforceable and operates to exclude any claim for contributions related to work performed in JPC's shop by non-union employees. The contracts in the record are clear that the Specialty Agreement governs and JPC shop employees are not covered by any of the collective bargaining agreements. In addition, the extrinsic evidence that has been presented of the parties' bargaining history and conduct supports a finding that the 2010 Specialty Agreement governs the parties' relationship. Over the 16-year course of dealing, JPC did not pay and the Plaintiff Funds did not seek contributions for non-union shop employees. Rather, when the Plaintiff Funds conducted an audit of JPC's contributions for the periods of September 25, 2006-December 31, 2008 and January 1, 2010-December 31, 2012, the audits did not assert that there was any obligation for JPC to contribute for shop work by non-union employees. Finally, after Local 8 was merged into Local 592 on September 1, 2015,

Plaintiff Bill Ousey, President/Business Manager of the Cement Masons and Plasterers Union, Local 592, sent a letter dated October 22, 2015 to JPC terminating the 2010 Specialty Agreement effective December 1, 2015. He wrote:

> This letter serves as official notification that the agreement between Jersey Panel and Local 8 signed by William Taylor and Dominick Baruffi **will** be terminated effective December 1, 2015, at which time the International Agreement **will** take precedent [sic], which was signed in 2003 by John J. Doughtery, President of OPCMIA and Dominick Baruffi.

(Emphasis added.) A plain reading of the letter reflects Ousey's understanding that the 2010 Specialty Agreement, not the 2003 International Agreement, governed in the geographic jurisdiction of Local 8 until December 1, 2015.

## Conclusion

For the reasons placed on the record during oral argument, as well as those stated here, Defendant's motion for partial summary judgment [22] will be granted and Plaintiffs' motion [23] will be denied.

An appropriate Order will be entered.

Dated: May 29, 2018  /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.